**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **CHARLES R. GOLDSTEIN,** | : | |
| **Chapter 7 Trustee for K Capital Corp.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | Misc. Action No. 13-306 (ABJ/JMF) |
| | : | |
| **FEDERAL DEPOSIT INSURANCE** | : | |
| **CORPORATION, Receiver of K Bank,** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM OPINION**

This case was referred to me for full case management.  Currently pending and ready for

resolution is <u>Plaintiff's Motion to Quash Subpoena to Protiviti, Inc.</u> [#1].[1]

**BACKGROUND**

Petitioner in this case, Charles Goldstein ("Petitioner-Trustee"), objects to a subpoena

*duces tecum* and *ad testificandum* issued by this Court to Protiviti, Inc ("Protiviti").  Protiviti is a

third party in an underlying bankruptcy dispute between petitioner-trustee and the Federal

Deposit Insurance Corporation ("FDIC") currently pending in the District Court for the District

of Maryland. <u>Defendant's Memorandum (A) In Opposition to Plaintiff's Motion to Quash</u>

<u>Subpoena Issued to Protiviti, Inc. and (B) In Support of Cross-Motion to Compel Discovery</u>

<u>Pursuant to the Subpoena</u> [#7] at 3.  That case concerns the relationship between and certain

loans made by K Bank, a state-charted bank, and its parent bank holding company, K Capital,

before K Bank was placed under receivership. <u>Id.</u>

---

[1] The respondent, the FDIC, also filed <u>Defendant's Motion to Compel Compliance with</u>
<u>Subpoena to Protiviti, Inc.</u> [#6].  Although it is not yet ripe for my review, the issues raised
therein are identical to those raised in petitioner-trustee's motion to quash, and will therefore be
addressed here.

## FACTS AND PROCEDURAL HISTORY

K Bank was a wholly-owned subsidiary of K Capital, and "K Capital's principal asset was its ownership interest in K Bank." [#7] at 3.  K Bank was placed into receivership in November 2010, and the FDIC was appointed its receiver. Id.  At the same time, the assets of K Bank were sold to another bank, and documents related to K Bank's loans were transferred to the new bank. Id. at 4.  K Capital filed for bankruptcy a few days later, and Mr. Goldstein was appointed K Capital's trustee. Id.  The FDIC then transferred a large amount of documents to Mr. Goldstein in his capacity as trustee. Id.  On January 11, 2011, Mr. Goldstein submitted an application to the bankruptcy court to employ Protiviti as "financial and tax advisors" to assist the trustee with the management of K Capital's estate.[2] [#7-2] at 1.  In February 2011, Mr. Goldstein, acting as trustee, filed a claim in the K Bank receivership proceedings, asserting that K Bank and K Capital had issued the loans jointly, and that "any recoveries from the K Bank loans should be treated *pari passu* between K Capital and K Bank." [#7] at 5.  The FDIC rejected this claim, and in response, the trustee filed the underlying complaint against the FDIC. Id.

"Extensive discovery" has taken place in the district court in Maryland. Id.  The subpoena at issue was issued by the District Court for the District of Columbia in March of 2013.  It requests that a representative from Protiviti appear for a deposition and bring with him or her various documents relating to Protiviti's involvement in the trustee's work on behalf of K Capital.  See Subpoena to Testify at a Deposition in a Civil Action [#1-3].  On April 1, 2013, the petitioner brought the instant motion to quash. [#1]; [#7] at 6.

---

[2] Mr. Goldstein, in addition to being the independent court-appointed trustee for K Capital, is also the Managing Director of Protiviti. Id. at 9.  However, he was appointed to serve as trustee in his individual capacity, and although they worked together on behalf of K Capital after Protiviti's employment as Mr. Goldstein's advisor, Mr. Goldstein and Protiviti performed separate and distinct roles in the underlying litigation.  In other words, Mr. Goldstein was not an employee of Protiviti in his role as trustee of K Capital.

**LEGAL STANDARD**

Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action." Fed. R. Civ. P. 26(b)(1).  However, if the discovery is sought through a subpoena to a third party, and responding to the subpoena would "require[] disclosure of privileged or other protected matter," or "subject[] a person to undue burden," the third party may move to quash the subpoena under Rule 45. Fed. R. Civ. P. 45; see also In re Subpoena Goldberg, 693 F. Supp. 2d 81, 83 (D.D.C. 2010).  Although, in general, "a party [to a dispute] . . . lacks standing to challenge a subpoena issued to a third party," the party may do so on behalf of the third party if there is a viable "claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." Washington v. Thurgood Marshall Acad., 230 F.R.D. 18, 21 (D.D.C. 2005).

However, "the quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." Flanagan v. Wyndham Intern. Inc., 231 F.R.D. 98, 102 (D.D.C. 2005) (citing, among others, Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)).  Indeed, "a court should loathe to quash a subpoena if other protection of less absolute character is possible." Flanagan, 231 F.R.D. at 102.  In the context of a subpoena *duces tecum*, "this Court has previously expressed its preference that a deposition proceed and the deponent assert her objections during the deposition, thus allowing the deposing party to develop circumstantial facts in order to explore the propriety of the . . . objection." Id. at 103 (internal quotations omitted).

**ANALYSIS**

Petitioner-trustee asserts three arguments in favor of quashing the subpoena:  1) that the subpoena constitutes an impermissible attempt to gain discovery from Protiviti that was already precluded by the district court in the underlying action, 2) that the FDIC may not compel testimony or documents from Protiviti because Protiviti assisted the petitioner–trustee in his claim against the FDIC on behalf of K Capital, and therefore any information held by Protiviti is protected by either the attorney-client or work product privileges or both ([#1-1] at 1-2), and 3) that Protiviti was hired and used "solely for litigation support" and is therefore "akin to . . . a non-testifying expert" who cannot be deposed.[3]

Petitioner-trustee's first argument applies only to the document production aspect of the subpoena; his remaining arguments apply to the deposition aspect as well.  I will address each aspect of the subpoena, and the corresponding arguments, in turn.

**I.      The Subpoena *Duces Tecum***

Petitioner-trustee argues that the documents requested in the FDIC's subpoena *duces tecum* are identical to the documents requested in a motion to compel in the underlying litigation, which was stricken by the district court because the FDIC did not timely object to the trustee's claims of privilege. [#1-1] at 8.

Petitioner-trustee asserts that he identified all the privileged communications between trustee and Protiviti on a privilege log, and the FDIC was required, under local rules, to raise any objections to that log within thirty days. Id.  The FDIC did not respond within those thirty days,

---

[3] Although the petitioner-trustee briefly asserts that the subpoena presents an undue burden to Protiviti, by petitioner-trustee's own admission, his "primary reason for filing the motion to quash is to protect against disclosure of privileged and work product materials." Plaintiff's Reply in Support of Motion to Quash Subpoena Issued to Protiviti, Inc. [#8] at 4 n.5.  Nevertheless, I will briefly touch on the burden issue in Section II.D, *infra*.

but instead filed a motion to compel four months later, seeking the same documents. Id.  The trustee filed a motion to strike the motion to compel, which was granted by Magistrate Judge Gallagher on February 6, 2013. [#1-8] at 1.  Magistrate Judge Gallagher held that, because no reason was given for the four month delay between the delivery of plaintiff's privilege log and the filing of defendant's motion to compel, the motion had to be stricken for failure to comply with the local rules. Id.

Two months after Magistrate Judge Gallagher issued her opinion, the FDIC served the subpoena at issue here.  Both petitioner-trustee and Protiviti argue that the instant subpoena is virtually identical to the discovery requested in the FDIC's motion to compel. [#1-1] at 9; Protiviti, Inc.'s Opposition to Defendant's Motion to Compel Compliance with Subpoena [#10] at 1-3.  Petitioner-trustee, therefore, argues that the subpoena at issue here is an impermissible attempt by the defendant to get out from under an unfavorable discovery limitation already in place. [#1-1] at 8.

The FDIC counters that the district court's order did not address the "substance" of the requested information and did not prohibit the FDIC from requesting that information from Protiviti. [#7] at 17.  Although both of these arguments are technically true, they miss the point. I agree with the petitioner-trustee that, if the documents requested in the motion to compel are identical to the documents requested in the subpoena, it would violate the principles of comity for me to circumvent Magistrate Judge Gallagher's order denying production of those documents, regardless of whether her grounds were procedural or substantive.

In a different, but related context, courts have held that Rule 45 subpoenas are subject to the same discovery deadlines and orders as any other type of discovery.  See Ghandi v. Police Dep't of City of Detroit, 747 F.2d 338, 354-55 (6th Cir. 1984); Wantanobe Realty Corp. v. City

of New York, 159 Fed Appx. 235, 240 n.2 (2d Cir. 2005). Indeed, a "Rule 45 [subpoena] . . .
should not be used to obtain pretrial production of documents or things . . . from a party in
circumvention of discovery rules or orders." 7-34 Moore's Federal Practice – Civil § 34.02
(2013). If a discovery deadline has passed, "a party may not employ a subpoena to obtain
materials from a third party that could have been procured during the discovery period." 9-45
Moore's Federal Practice – Civil § 45.03. See also "Relation of Rule 45 to the Discovery
Rules," 9A Fed. Prac. & Proc. Civ. § 2452 (3d ed.) ("Parties should not be allowed to employ a
subpoena after a discovery deadline to obtain materials from third parties that could have been
produced before discovery.").

　　　　If a Rule 45 subpoena cannot be used to escape from a scheduling-related discovery
order, it certainly cannot be used to escape from another procedural discovery order, such as an
order finding that a motion to compel the very same documents must be stricken. To hold
otherwise would open up an avenue for litigants to get around unfavorable holdings by the
district court. I am disinclined to permit such a work-around, when it is clear that the FDIC
could have objected to the trustee's privilege log within the time allotted under the local rules,
and did not provide good cause—either to Judge Gallagher or to me—for why it did not do so.

　　　　Accordingly, to the extent that responding to the subpoena *duces tecum* would require
production of documents already identified on the trustee's privilege log, the subpoena must be
quashed. However, given that Defendant's First Set of Requests to Plaintiff Charles R.
Goldstein for the Production of Documents and Things [#10-1] is directed towards the trustee
and asks for only four, albeit broad, categories of documents, and the subpoena *duces tecum* is
directed towards Protiviti and lists 22 categories of documents, there may be some documents
responsive to the latter that are not precluded by Judge Gallagher's order regarding the former.

I will therefore order that, if there are such documents, petitioner-trustee identify them and assert any claim of privilege in a privilege log that complies with the requirement of Fed. R. Civ. P. 26(5)(A)(ii), *i.e.*, that the description of the withheld document be sufficient in itself "to enable other parties to assess the claim." Id.  I have expressed my impatience with privilege log entries that do not meet this requirement. Chevron Corp. v. Weinberg Group, 286 F.R.D. 95, 101 (D.D.C. 2012).  Counsel are advised that any log entry that fails to meet this requirement will be disregarded and the claim of privilege rejected.

Alternatively, I encourage the parties to meet and confer regarding whether a protective order under Federal Rule of Evidence 502(d) may suffice to protect the privileged information. Such an order would allow the parties to go forward with discovery without waiving any claim of privilege over a particular document.  See F.R.E. 502(d) ("A Federal court may order that the privilege or protection is not waived by disclosure connected with the litigation pending before the court. . ."); D'Onofrio v. SFX Sports Group Inc., 256 F.R.D. 277, 278-79 (D.D.C. 2009) (internal citations omitted).  If the parties are able to agree on a 502(d) order, they may submit it for my approval, and no privilege log is necessary.  I also note that the use of Rule 502(d) may allow the FDIC to review more documents and obtain the information it seeks via that avenue, rather than through a long and arduous deposition.  This approach would necessarily reduce the number of topics the deposition would have to cover.

If the parties cannot agree on a 502(d) order, however, the privilege log should be submitted to me within three weeks of the issuance of this opinion.  I will then review the log and rule individually on any claims of privilege.

## II.   **The Subpoena** *Ad Testificandum*

I will now move on to address the various arguments put forth by petitioner-trustee in favor of quashing the subpoena *ad testificandum*, which, to my knowledge, is not subject to any prior orders from the Maryland district court.[4]

### A.   **Non-Testifying Expert Protection**

Petitioner-trustee's first argument in favor of quashing the subpoena *ad testificandum* is that Protiviti was hired in anticipation of litigation, and thus should be treated as a "non-testifying expert" that is exempt from testifying under Rule 26(4)(d) of the Federal Rules of Civil Procedure.  This rule protects from disclosure by interrogatories or at a deposition the opinions held and the facts known by an expert retained in anticipation of litigation or for trial preparation, but who is not expected to testify at trial.  It is clear that Protiviti was never expected to be called to testify at trial, but, after that, the parties dispute the applicability of this Rule to Protiviti.

As the FDIC correctly points out, the application submitted by the petitioner to the bankruptcy court in Maryland requests the appointment of Protiviti to serve "as financial and tax advisors to the Trustee." [#7-2] at 1.  The application goes on to state that "as financial and tax advisors to the Trustee, Protiviti will be engaged to" assist the Trustee in a number of ways,

---

[4] The FDIC reads petitioner-trustee's motion to quash as asserting that Protiviti may not be deposed because the trustee and Protiviti are "one and the same," in that the trustee is employed by Protiviti outside of the scope of his appointment as trustee of K Capital. [#7] at 9.  The FDIC believes petitioner-trustee to be arguing that, because the trustee was already deposed, a deposition of Protiviti would allow the FDIC to essentially depose the trustee twice.  This comes from petitioner-trustee's statement that a deposition of Protiviti would be "an improper end-run attempt to depose Mr. Goldstein again." [#1-1] at 2.  To the extent that petitioner-trustee is asserting such an argument, it is clear that the trustee and Protiviti are not one and the same for purposes of the underlying litigation, as the trustee was appointed independent of his employment by Protiviti, and Protiviti was hired as a consultant later on.  I see no procedural order in the underlying litigation that would absolutely preclude the deposition of Protiviti under the subpoena issued by this court.

including:  to supervise "the liquidation of the Debtor's loan portfolio;" to "evaluate pre-petition transactions undertaken by the Debtor;" to "evaluate possible tax assets;" to "prepare necessary tax returns;" and more. [#7-2] at 3.  Among this list, Trustee also includes the responsibility of Protiviti to "assist in the prosecution of potential adversary actions." Id.  It would appear, therefore, on the basis of this list, that Protiviti was hired for a number of reasons, which included – but were not limited to – assistance with potential future litigation.

The protections to which Protiviti is entitled by virtue of its employment by the trustee are unclear.  Under Rule 26(b)(4)(D) of the Federal Rules of Civil Procedure, "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been *retained or specifically employed* by another party in anticipation of litigation." Fed. R. Civ. P. 26(b)(4)(D) (emphasis added).  Whether Protiviti is entitled to such protection, however, depends on the language emphasized above.  If a consultant is not employed specifically or solely for the purposes of assistance in litigation – and, instead, wears many other hats throughout his relationship with the attorney or client in a case – then that consultant may be "retained or specifically employed" in anticipation of litigation as to one aspect of his responsibilities, but not as to others.  Thus, the privilege against disclosure conferred by the Rule may pertain only to certain topics of the intended deposition.  It therefore is necessary to commence the deposition and rule on the applicability of this privilege on a question by question basis.

## B.     Attorney-Client Privilege

Even if Protiviti is not treated as a non-testifying expert, and therefore cannot claim immunity from testifying on that ground, the petitioner-trustee also argues that the deposition is improper because the attorney-client relationship extends to the attorney's consultant in this

situation, and any deposition of Protiviti would require revealing confidential communications between the trustee and his attorney. [#1-1] at 7.

Ordinarily, the presence of a third party during a discussion between a client and his attorney would defeat any claim that such discussions were protected by the attorney-client privilege.  However, petitioner-trustee claims that communications where a third party non-lawyer is present are still protected by the attorney-client privilege if the third party's presence or participation was "necessary, or at last [sic] highly useful, for the effective consultation between the client and the lawyer." Id. at 8 (citing In re Kovel, 296 F.2d 918, 922 (2d Cir. 1961)).

Under precedent from this Court and the Court of Appeals for this circuit, if a consultant is so intertwined with the attorney in a case, such that he is providing assistance in developing litigation and legal strategies in a manner similar to multiple attorneys working on a case at a law firm, the attorney-client privilege extends to those consultants.  See Trustees of Elec. Workers Local No. 26 Pension Trust Fund v. Trust Fund Advisors, Inc., 266 F.R.D. 1, 8 (D.D.C. 2010); Fed. Trade Comm'n v. GlaxoSmithKlein, 294 F.3d 141, 147-48 (D.C. Cir. 2002).  However, the attorney-client privilege is a limited one, and it does not apply to every communication.  As I have said in other opinions, the "fundamental question" is whether "the communication [was] made for the purpose of securing either an opinion on law, legal services, or assistance in some legal proceeding." United States v. Motorola, No. 94-CIV-2331, 1999 WL 552553 (D.D.C. May 28, 1999), quoted in Banks v. Office of Senate Sergeant-at-Arms, 222 F.R.D. 1, 3 (D.D.C. 2004) (citing In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984)).  Also relevant is "whether the client reasonably intended the attorney to keep the communication confidential." Id. (citing In re Ampicillin Antitrust Litigation, 81 F.R.D. 377, 389 (D.D.C. 1978)).

The petitioner-trustee has sworn under oath, via affidavit, that Protiviti's assistance with the case was necessary or highly useful for the effective consultation between the trustee and his attorney. Declaration of Charles R. Goldstein, [#1-7] at 2 ("Protiviti's assistance was highly useful in my communications with counsel regarding the prosecution of the FDIC-R Litigation."). Mr. Goldstein is therefore rightly concerned that the deposition of Protiviti or disclosure of documents in Protiviti's possession may reveal confidential communications between Mr. Goldstein, his attorney, and Protiviti.

This possibility, however, does not mean that Protiviti should be insulated from deposition full stop. Instead, it indicates that Protiviti may have genuine, valid objections to some of the deposition topics or document requests. Accordingly, this is not a proper ground for quashing the subpoena *ad testificandum*, but rather a reason for objecting to certain questions on a case by case basis, as questions implicating privileged conversations arise.

C.     **Work Product Privilege**

The petitioner-trustee also argues that Protiviti cannot be forced to testify about the deposition topics noticed because each topic would require disclosure of petitioner-trustee's attorney's work product, which is not discoverable under Rule 26(b)(3)(A). [#1-1] at 4-7. Rule 26(b)(3)(A) protects from disclosure documents and other tangible items "prepared in anticipation of litigation or for trial by or for another party or its representative," to include a party's consultant. Fed. R. Civ. P. 26(b)(3)(A); see also U.S. ex rel. Westrick v. Second Chance Body Armor, Inc., 288 F.R.D. 222, 225 (D.D.C. 2012). Petitioner-trustee worries that responding to the subpoena would necessarily require disclosure of the mental impressions, conclusions or legal theories of the petitioner-trustee and his attorneys. [#1-1] at 5.

It is possible that Protiviti has documents or information responsive to FDIC's subpoena that fall within the protection of the work product doctrine.  The mental impressions and legal conclusions of an attorney concerning litigation "are never to be disclosed." Banks, 222 F.R.D. at 3.  As I have stated in other recent cases, however, there is a distinction between "opinion work product, "which is never discoverable, and factual work product," which is discoverable when a party shows that it "has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Chevron Corp., 286 F.R.D. at 99 (citing Fed. R. Civ. P. 26(b)(3)(A)(iii)).

I find that the FDIC has made a substantial showing that it needs at least some of the information it requests in order to adequately defend itself in the Maryland case.  When asked in his deposition about facts that are central to the case, the petitioner-trustee, Mr. Goldstein, was unable to answer the questions, and instead suggested that staff from Protiviti may know more because they were the ones who worked on certain issues. [#7] at 12.

Furthermore, the deposition topics noticed in the subpoena are numerous and broad, and the briefings on the instant motion do not go into detail sufficient enough for me to conclude that absolutely no non-privileged information could be produced by Protiviti in response to the subpoena.  The FDIC suggests that Protiviti would agree with me on this point because, at least at first, it did not oppose production or testifying wholesale, but rather requested that the scope of the subpoena be narrowed. [#7] at 3.  However, Protiviti has since filed an opposition to the defendant's motion to compel, arguing that defendant is seeking discovery here that has already been barred in Maryland, and is thus abusing the subpoena process to get around another judge's order. [#10] at 1-3.

Accordingly, I find that the work product privilege is not sufficient grounds for quashing the subpoena *ad testificandum*. Instead, as with the attorney-client privilege, the petitioner-trustee may assert claims of privilege on a question by question basis.

### D.    Undue Burden

Finally, the petitioner-trustee makes a short statement that complying with the subpoena would be unduly burdensome for Protiviti, because Protiviti "would be required to incur the time and cost of searching for and assembling all litigation support materials," which would "divert[] Protiviti's time and resources from litigation and other matters for the trustee" and that it would also take quite a bit of time for the trustee and his counsel to review each document for claims of privilege. Plaintiff's Reply in Support of Motion to Quash Subpoena Issued to Protiviti, Inc. [#8] at 4 n.5. Although this argument is largely directed to the subpoena *duces tecum*, Protiviti would also need to spend time sifting through and reviewing relevant documents to prepare for its deposition. The burden such work would create, however, is not sufficient to quash the subpoena.

First, in his opening brief, petitioner-trustee tells the court that he already "identified his privileged communications with Protiviti on a Privilege Log supplied to the Defendant." [#1-1] at 8. This seems to indicate that much of the work of reviewing and identifying relevant documents and claims of privilege has already been done. Additionally, as noted by the respondent, Protiviti may seek compensation for the time it takes to comply with the subpoena, so it will not be burdened financially. [#7] at 9. Although this will certainly take time, petitioner-trustee has not convinced me that complying will create undue burden for Protiviti under Rule 45. Accordingly, the motion to quash will not be granted on this ground.

**CONCLUSION**

Given the complex relationship between petitioner-trustee and Protiviti, resolution of this motion is not easy.  Protiviti is likely in possession of some documents which reveal communications from client to attorney that were intended to be confidential.  It is likewise more likely than not to be in possession of work product that contains the opinions or mental processes of trustee and his counsel.  I do not doubt that there will be questions, falling under the broad deposition categories provided by the FDIC, which Protiviti will not be able to answer without revealing confidential communications or work product.  On the other hand, the subpoena as written is broad enough that I can imagine many other responsive answers which do not fall under either the attorney-client or work product privileges.  It is therefore hard to say, given my limited involvement with the case, whether there is information known to Protiviti that is responsive to the subpoena but outside of any privilege.  With this uncertainty, quashing the subpoena in its entirety is improper.

We will therefore proceed as follows.  I will grant in part the petitioner-trustee's motion to quash the subpoena *duces tecum*, insofar as it requests the same documents responsive to the FDIC's first set of requests for documents.  I will deny it, however, as to any documents that were not previously identified on Mr. Goldstein's privilege log.  I will also deny the motion to quash as to the subpoena *ad testificandum*.  However, to protect petitioner-trustee's genuine claims of privilege, I will order that 1) any documents responsive to the subpoena that were not identified on Mr. Goldstein's original privilege log, be identified on a privilege log along with any privilege claimed, and filed with the Court, unless the parties agree in advance to a 502(d) order; and 2) that the parties contact my chambers to schedule a mutually agreeable time in which to hold Protiviti's deposition at the U.S. District Court for the District of Columbia so that

I may rule immediately on any genuine claims of privilege asserted during the deposition.  I will not sit in on the entire deposition, but I will make myself available to resolve any privilege disputes as they arise.

An Order accompanies this Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE